NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DIRECTV, Inc., | : | |
| | : | |
| Plaintiff, | : | Civ. No. 03-5606 (GEB) |
| | : | |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| MICHAEL J. MARINO, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

This matter comes before the Court upon plaintiff DIRECTV's ("Plaintiff" or

"DIRECTV") motion to dismiss defendant Dave Richards' ("Defendant") counterclaim pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

DIRECTV also seeks to recover its attorneys' fees associated with this motion.  The Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court, having considered the

parties' submissions and decided the matter without oral argument pursuant to Fed. R. Civ. P. 78,

will grant DIRECTV's motion and award attorneys' fees.

I.      BACKGROUND

On November 25, 2003, DIRECTV instituted this action against several named

defendants,[1] including Dave Richards, alleging violation of the Federal Communications Act of

1934 ("the Communications Act") , 47 U.S.C. § 605, and the Electronic Communications

Privacy Act ("the Privacy Act"), 18 U.S.C. §§ 2510-2521.  See Complaint ¶ 5.

DIRECTV is a direct broadcast satellite provider that delivers television programming to

---

[1]All other defendants in this action have settled with DIRECTV.

millions of homes and businesses across the nation.  See Complaint ¶ 1.  DIRECTV invested

over $1.25 billion in developing its direct broadcast satellite system.  Id.  In order to secure and

prevent unauthorized viewing of its programming, DIRECTV encrypts, or electronically

scrambles, its satellite transmissions.  Id. at ¶ 2.  DIRECTV has been plagued by the proliferation

of companies engaged in the sale of illegal equipment that unscrambles their signal and allows

users to view their programming for free.  With the assistance of law enforcement authorities,

DIRECTV has engaged in an aggressive campaign designed to identify the manufacturers and

distributors of pirate access devices and the individuals purchasing them and recover lost revenue

via legal actions.

On or around December 1, 2001, DIRECTV executed Writs of Seizure upon an internet-

based seller, The Computer Shanty.  Id. at ¶ 3.  Through its website, The Computer Shanty was

allegedly selling pirate access devices that are used to illegally intercept transmission signals,

including DIRECTV's programming.  Id.  DIRECTV acquired The Computer Shanty's business

records and commenced actions against those individuals who allegedly purchased illegal

devices for resale or to intercept DIRECTV's programming for unauthorized viewing.  Id.

DIRECTV alleges that Defendant purchased pirate access devices over the internet on

The Computer Shanty's website.  Id. at ¶ 13.  On or about May 30, 2001, Defendant allegedly

purchased two devices; namely, two "Boot Loader Boards."  Id. at ¶ 13(a).  These devices were

shipped to Defendant's home in Lodi, New Jersey.  Id.  DIRECTV claims that Defendant's

actions violate Section 605 of the Communications Act and Sections 2510-2521 of the Privacy

Act.

On August 31, 2004, Defendant filed a motion to dismiss DIRECTV's complaint and a

motion to quash the third-party subpoena on PayPal.[2]  On October 14, 2004, this Court denied

both motions.  Subsequently, on October 18, 2004, Defendant filed an answer and counterclaim,

asserting that DIRECTV had engaged in false, misleading and deceptive acts and practices in

violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. §§ 56:8-2 and 56:8-19, et

seq., by circulating derogatory and inaccurate information regarding Defendant's financial

responsibility and credit worthiness ("Counterclaim"), causing him to suffer emotional and

financial damages.  See Counterclaim ¶¶ 6-31.  By letter dated November 3, 2004, DIRECTV

advised Sobel that it believed the Counterclaim was patently frivolous and demanded that it be

withdrawn.  During a November 15, 2004 Telephonic Status Conference with Magistrate Judge

John J. Hughes, the parties addressed Defendant's counterclaim.  Judge Hughes' November 19,

2004 Scheduling Order states: "In the event that Defendant Richards does not withdraw his

Counterclaim, Plaintiff may, at any time, move to dismiss Defendant Richards' Counterclaim and

may seek its attorney's fees in connection therewith."  See Scheduling Order, entered November

19, 2004 [52].

Defendant has not withdrawn the Counterclaim.  On December 1, 2004, DIRECTV filed

the instant motion to dismiss the Counterclaim and seeks its attorneys' fees and costs associated

with the motion.

II.     ANALYSIS

A.      Standard for a Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may be granted only if,

---

[2]On February 17, 2004, Defendant's counsel, Jonathan J. Sobel, Esq. ("Sobel") also filed a motion to dismiss DIRECTV's complaint against two other named defendants, Aaron Kremble and Richard Yoss.  This Court denied both motions on March 15, 2005.

accepting all well-pleaded allegations in the complaint as true, and viewing them in the light

most favorable to plaintiff, plaintiff is not entitled to relief.  Oran v. Stafford, 226 F.3d 275, 279

(3d Cir. 2000); Langford v. City of Atl. City, 235 F.3d 845, 850 (3d Cir. 2000); Bartholomew v.

Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).  The Court may not dismiss a complaint unless

plaintiff can prove no set of facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41,

45-46 (1957); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985), cert.

denied, 474 U.S. 935 (1985).  "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416

U.S. 232, 236 (1974).

Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and

draw all reasonable factual inferences in favor of the plaintiff.  [The motion can be granted] only

if no relief could be granted under any set of facts that could be proved."  Turbe v. Gov't of the

V.I., 938 F.2d 427, 428 (3d Cir. 1991) (citing Unger v. Nat'l Residents Matching Program, 928

F.2d 1392, 1394-95 (3d Cir. 1991)); see also Langford, 235 F.3d at 850; Dykes v. SE. Pa. Transp.

Auth., 68 F.3d 1564, 1565, n.1 (3d Cir. 1995), cert. denied, 517 U.S. 1142 (1996); Piecknick v.

Commw. of Pa., 36 F.3d 1250, 1255 (3d Cir. 1994); Jordan v. Fox, Rothschild, O'Brien &

Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).  A complaint may be dismissed for failure to state a

claim where it appears beyond any doubt "that no relief could be granted under any set of facts

that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69,

73 (1984).

A complaint should not be dismissed unless it appears beyond doubt that "the facts

alleged in the complaint, even if true, fail to support the claim."  Ransom v. Marrazzo, 848 F.2d

398, 401 (3d Cir. 1988). Legal conclusions made in the guise of factual allegations, however, are

given no presumption of truthfulness. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997) ( "[A] court need not credit

a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

> B.   Defendant's Counterclaim Must Be Dismissed Because DIRECTV And
>      Defendant Did Not Engage In A Consumer Transaction

Defendant contends that DIRECTV has engaged in a campaign designed to undermine

Defendant's financial responsibility and credit worthiness by disseminating false, misleading and

deceptive information in violation of the New Jersey Consumer Fraud Act. See Counterclaim ¶¶

6-31. More specifically, Defendant alleges that DIRECTV's conduct violates Sections 56:8-2

and 56:8-19 of the New Jersey Consumer Fraud Act. See N.J. STAT. ANN. §§ 56:8-2 and 56:8-19

(2005). Section 56:8-2 provides, in pertinent part that:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing, concealment,
> suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise or
> real estate, or with the subsequent performance of such person as
> aforesaid, whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an unlawful
> practice.

N.J. STAT. ANN. §§ 56:8-2 (2005). Section 56:8-19 provides a private right of action for conduct

proscribed by the statute.

The absence of a consumer transaction between the parties is fatal to Defendant's

counterclaim. The Supreme Court of New Jersey has clarified that the New Jersey Consumer

Fraud Act is

> aimed basically at unlawful sales and advertising practices
> designed to induce *consumers* to purchase merchandise or real
> estate . . . The legislative concern was over sharp practices and
> dealings in the marketing of merchandise and real estate whereby
> the *consumer* could be victimized by being lured into a purchase
> through fraudulent, deceptive or other similar kind of selling or
> advertising practices.

Daaleman v. Elizabethtown Gas Co., 390 A.2d 566, 568-69 (N.J. 1978) (emphasis added).  Put

simply, the Act is intended to protect consumers engaging in consumer transactions.  See J&R

Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1272 (3d Cir. 1994).

Further, New Jersey courts have clarified that the New Jersey Consumer Fraud Act only applies

to "bona fide consumers" of a product.  See Grauer v. Norman Chevrolet GEO, 729 A.2d 522,

524 (N.J. Super. Ct. Law Div. 1998).  In the present case, even drawing all favorable inferences

in Defendant's favor, it is impossible to find that a bona fide consumer transaction existed

between the parties.

On the contrary, this entire litigation is premised on the absence of a legitimate consumer

transaction; that is, the underlying facts allege that Defendant was illegally intercepting

DIRECTV's programming without paying for it.  See DIRECTV, Inc. v. Pepe, 03-2424

(Katharine S. Hayden, U.S.D.J.) (holding that the defendant's counterclaim that DIRECTV's

initiation and pursuit of claims that defendant illegally intercepted its' signal did not violate the

New Jersey Consumer Fraud Act because "[t]he actual *absence* of a consumer relationship is the

focus of the lawsuit against [the defendant].") (emphasis in original).  This Courts determination

that DIRECTV's complaint could succeed as a matter of law is antithetical to any contention that

their conduct somehow violated the New Jersey Consumer Fraud Act.  Further, Defendant's

contention that his status as a legitimate subscriber of DIRECTV's programming somehow

brings his counterclaim within the purview of the New Jersey Consumer Fraud Act is devoid of

merit.  Defendant is attempting to obscure the facts underlying DIRECTV's claims.  That

Defendant may also pay for some of DIRECTV's programming is entirely irrelevant to whether

or not Defendant purchased pirate access devices to illegally intercept DIRECTV's signal.[3]

Therefore, the Court finds that Defendant's counterclaim must be dismissed.

    C.    DIRECTV Is Entitled To Attorneys' Fees

    By letter dated November 3, 2004, DIRECTV demanded that Sobel withdraw the

counterclaim.[4]  In the letter, DIRECTV advised Sobel that it regarded the Counterclaim as

"patently frivolous," directing him to Judge Hayden's opinion in DIRECTV v. Pepe.  The letter

advised Sobel that DIRECTV would seek sanctions if he did not withdraw the counterclaim.

Significantly, DIRECTV alleges that Sobel has asserted the identical counterclaim on behalf of

fourteen (14) other defendants in actions brought by DIRECTV under the Communications Act

and Privacy Act and has voluntarily dismissed this counterclaim in all fourteen (14) instances

after DIRECTV filed a motion to dismiss.  In his opposition brief, Sobel does not dispute the

veracity of these allegations.  Instead, Sobel merely argues that whether or not he asserted and

subsequently withdrew similar or identical counterclaims in other actions is irrelevant.  Sobel is

only partially correct.  White it is true that his conduct in these other actions is irrelevant to

---

[3]Defendant also appears to argue that an extension of the New Jersey Consumer Fraud
Act to cover DIRECTV's alleged conduct is warranted.  The Court strongly disagrees.  The Act
is to be liberally construed in favor of *the consumer*.  As discussed above, there is no consumer
transaction in this case.

[4]The letter also requested that Sobel withdraw the identical counterclaim asserted in three
other actions brought by DIRECTV against his clients.  See DIRECTV, Inc. v. Cimiluca (Gary
Hemburger), Civ. No. 03-2422; DIRECTV, Inc. v. Minnick (Jim Minnick), Civ. No. 03-311;
DIRECTV, Inc. v. Minnick (Martha Grubb), Civ. No. 03-311.

whether the Counterclaims must be dismissed as a matter of law, the Court finds this conduct to

be clearly relevant to the question of  whether attorneys' fees are appropriate in this case.

Further, this issue was discussed by the parties during a November 15, 2004 telephonic

status conference with Judge Hughes.  During that call, DIRECTV advised Judge Hughes that it

believed the counterclaim was patently frivolous and that Sobel had voluntarily dismissed

identical claims on fourteen (14) other occasions.  Judge Hughes addressed this issue in his

November 18, 2004 Scheduling Order, specifically stating: "In the event that Defendant Richards

does not withdraw his Counterclaim, Plaintiff may, at any time, move to dismiss Defendant

Richards' Counterclaim and may seek its attorney's fees in connection therewith."[5]  See

---

[5]Defendant contends "that the portion of Judge Hughes' Order which authorizes Plaintiff
to seeks fees is inappropriate" because Judge Hughes lacked the "authority to impose such a
condition in a Scheduling Order."  Defendant's Opposition Brief at 15-16.  Defendant's
argument is without merit.  Local Civil Rule 72.1(a)(3)(C) provides that "[a]s part of the
Magistrate Judge's general supervision of the civil calendar, the Magistrate Judge shall conduct
scheduling conferences and enter scheduling orders in accordance with Fed. R. Civ. P. 16 . . ."
Local Civ. R. 72.1(a)(3)(C) (2005).  Federal Rule of Civil Procedure 16(b)(6) provides that the
scheduling order may also include "any other matters appropriate in the circumstances of the
case." Fed. R. Civ. P. 16(b)(6) (2005).  Accordingly, this Court concludes that Judge Hughes
had the authority to include a provision permitting DIRECTV to move for attorneys' fees and
costs in the November 18, 2004 Scheduling Order.

Defendant also contends that DIRECTV's motion to dismiss the Counterclaim is
untimely.  However, DIRECTV's November 3 letter to Sobel evidences that Sobel consented to
an extension of time to answer or otherwise respond until he advised whether he intended to
withdraw the Counterclaim.  Attorneys are encouraged to work cooperatively and extend
professional courtesies.  This Court would undermine those policies if it were to permit
Defendant to now argue that DIRECTV's motion should be considered untimely.  Further, during
a November 15, 2004 teleconference with Judge Hughes, DIRECTV raised its' position that the
Counterclaim was frivolous and was granted permission to seek attorneys' fees should Sobel not
withdraw the motion.  Judge Hughes November 18, 2004 Order permitted DIRECTV to move to
dismiss and seek fees and costs at any time.  As discussed above, Judge Hughes had the authority
to enter the November 18, 2004 Scheduling Order.  Moreover, Defendant never asserted that a
motion to dismiss filed by DIRECTV should be considered untimely nor did he contest the
contents of Judge Hughes' November 15 Order.  As such, Defendant is precluded by the doctrine

Scheduling Order, entered November 19, 2004 [52].

In light of these facts and this Court's determination that the Counterclaim is entirely without merit, the Court holds that DIRECTV is entitled to the attorneys' fees and costs incurred in addressing the Counterclaim.  DIRECTV placed Sobel on notice two times – via its November 3, 2004 letter and during the November 15, 2004 teleconference with Judge Hughes – that it believed his claims to be patently frivolous.  The letter pointed Sobel to Judge Hayden's decision in Pepe which pointedly concluded that the identical counterclaim could not be sustained under the Consumer Fraud Act because there was no consumer transaction.[6]  Further, Sobel's decision to voluntary withdraw similar or identical counterclaims in fourteen (14) other DIRECTV actions is circumstantial evidence that Sobel understands that the Counterclaim has no basis in law or in fact.  Further, as discussed above, this Court already determined that DIRECTV's claims had merit when it denied Defendant's motion to dismiss.  That holding is clearly inapposite to the success of the Counterclaim.  Accordingly, the Court concludes that it is appropriate to award DIRECTV the attorneys' fees incurred in association with this motion.

DIRECTV requests fees in the amount of $1,343.00, which allegedly represents 7.9 hours of associate time at the rate of $170.00 per hour.[7]  See DIRECTV Reply Brief.  However,

---

of laches from now arguing that the motion is untimely.  Therefore, this Court concludes that DIRECTV's motion was timely filed.

[6]For the reasons discussed in Section II.B., this Court finds the reasoning in Pepe to be sound.  As discussed infra, in its' November 3 letter, DIRECTV cautioned Sobel that it believed the Counterclaim was frivolous and cited to Pepe.  The Court considers this to be circumstantial evidence that Sobel was aware that the Counterclaim was frivolous yet chose not to withdraw it.

[7]Counsel for DIRECTV, David A. Cohen, Esq. ("Cohen"), represents in the reply brief that "[he] has[s] not sought reimbursement for any of [his] time reviewing the motion or in preparation for drafting and filing this reply."  Instead, DIRECTV only seeks $1,343.00,

DIRECTV has failed to submit an appropriate affidavit of services comporting with Local Civil Rule 54.1.  Without an affidavit of services, this Court is unable to determine whether this amount is reasonable and justified under the circumstances.  Accordingly, DIRECTV is directed to submit an appropriate affidavit of services within thirty (30) days of the entry of the Order accompanying this Memorandum Opinion.

III.     CONCLUSION

For the foregoing reasons, DIRECTV's motion to dismiss is granted.  Further, the Court finds that DIRECTV is entitled to the reasonable attorneys' fees expended preparing this motion.  DIRECTV is directed to submit an appropriate affidavit of services comporting with Local Civil Rule 54.1 within thirty (30) days of the entry of the Order accompanying this Memorandum Opinion.  An appropriate form of Order is filed herewith.

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

---

representing the associate time spent on the matter.  As discussed above, this Court will consider whether this amount is warranted upon DIRECTV's timely submission of an affidavit of services comporting with Local Civ. R. 54.1.  This Court will not entertain any request for fees or costs above $1,343.00.